962 F.2d 17
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Nigel FULLICK, Plaintiff-Appellant,
v.
BRECKENRIDGE SKI CORPORATION, a Delaware corporation, also
known as Victoria Breckenridge Corporation, a Delaware
corporation, and Victoria Vacations, Inc., a Delaware
corporation, Defendants-Appellees.
 No. 90-1377.
 United States Court of Appeals, Tenth Circuit.
 April 29, 1992.
 
 1
 Before LOGAN and JOHN P. MOORE, Circuit Judges, and ALLEY, District Judge*.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 ALLEY, District Judge.
 
 
 4
 The present action comes on before this Court on an appeal from a grant of summary judgment by the Honorable Richard P. Matsch, United States District Judge for the District of Colorado ("district court" or "district judge"). The material and undisputed facts are as follows.
 
 
 5
 On December 9, 1988, the Plaintiff/Appellant Nigel P. Fullick ("Fullick") participated in a speed skiing competition in Breckenridge, Colorado, sponsored by the Defendant/Appellee Breckenridge Ski Corporation ("Breckenridge").[1] While nearing the completion of his fourth run in the competition, Fullick was skiing at over 76 miles per hour when he lost a ski, careened through control fencing and hit a tree. Fullick broke several bones, including his back and right leg, as a result of the accident.
 
 
 6
 Before the competition began, Fullick, an experienced skier, executed a document entitled "Participation, Waiver and Release Agreement" ("Release"). This Release contains three subparts, after each of which appears a line for the competitor to initial to signify that he or she has read and understood the subpart. Fullick initialled each subpart and signed the Release at the bottom.
 
 
 7
 The contents of the Release are as follows. First, the Release quotes Section 33-44-110 of the Colorado Ski Safety Act of 1979 ("Ski Safety Act"), codified at 14 C.R.S. §§ 33-44-101, et seq. (1984). The first subpart also states, in bold print, that the competitor assumes and accepts "the risk of all course conditions for all speed skiing clinic and competition events, including, but not limited to, the course format and the course conditions...."
 
 
 8
 Second, also in bold print, the competitors must certify that they are "voluntarily participating in this clinic with knowledge of the dangers and risks involved and hereby agree to accept any and all risks of injury, paralysis or death." Third, the competitors must agree that they "knowingly and intentionally waive and release, indemnify and hold harmless [Breckenridge] ... from and against any and all claims, actions, causes of action, liabilities, expenses (including reasonable attorney's fees) and negligence of any kind or nature...."
 
 
 9
 In addition to the three subparts described above, the top of the Release contains language, also in bold print, that warns: "Please read carefully before signing. This is a release of liability." Finally, at the bottom of the Release, just above the signature line, it states in bold type: "I have carefully read, clearly understand and voluntarily sign this participation, waiver and release agreement."
 
 
 10
 The evidence is undisputed that Breckenridge required all of the competitors in the speed skiing competition to sign a Release identical to that signed by Fullick. Further, Fullick does not dispute that he was allowed to inspect the course just prior to the commencement of the competition, and that he did not express any concerns about the course to any Breckenridge official.
 
 
 11
 On December 14, 1990, before discovery had begun on the case, the district court granted summary judgment, holding that the Release was valid and enforceable as an exculpatory agreement, and releasing Breckenridge from Fullick's negligence claims. (Tr. of Hrng. on Mtn. for Summ. J. at 13-14.) The district court further found that Fullick's claim against Breckenridge for willful and wanton conduct should be dismissed on summary judgment, as Fullick failed to allege sufficient facts to establish the elements of that claim, even in view of the Affidavit of Fullick's speed skiing expert, Guy Dalla Riva. (Id. at 14-15.)
 
 
 12
 Judge Matsch based his decision with regard to Fullick's negligence claims on the Release alone, and not on the Ski Safety Act. (Id. at 13-14.) He stated that, in his opinion, the enactment of the Ski Safety Act did not preclude the existence of this type of release, and that such agreements were enforced in Colorado case law as well. (Id. at 9, 13-14). See, Heil Valley Ranch, Inc. v. Simkin, 784 P.2d 781, 784 (Colo.1989); Jones v. Dressel, 623 P.2d 370, 376 (Colo.1981).
 
 
 13
 Fullick presents two basic issues for review by this Court: First, whether the Release he executed is contrary to public policy as expressed in the Ski Safety Act, and is therefore no bar to his claim for damages. Second, whether the district court erred in granting summary judgment on his claim for willful and wanton conduct because genuine issues of material fact existed with regard to that conduct.
 
 I. Standard of Review
 
 14
 Fed.R.Civ.P. 56(c) provides the trial court's test for the propriety of summary judgment, when it states:
 
 
 15
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 16
 See, Martin v. Bd. of County Comm'rs., 909 F.2d 402, 404 (10th Cir.1990); Osgood v. State Farm Mut. Auto Ins. Co., 848 F.2d 141, 143 (10th Cir.1988); Maughn v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir.1985).
 
 
 17
 When reviewing a grant of summary judgment by a trial court, an appellate court applies the same standard used by the district court under Fed.R.Civ.P. 56(c). Weir v. Anaconda Co., 773 F.2d 1073, 1079 (10th Cir.1985). The reviewing court must examine the record to determine if any genuine issue of material fact remains, and if not, whether the district court properly applied the substantive law. Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir.1986). This review of the record is done in the light most favorable to the nonmoving party. Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987).
 
 
 18
 The party moving for summary judgment must prove his entitlement thereto beyond a reasonable doubt. Norton v. Liddel, 620 F.2d 1375, 1381 (10th Cir.1980). If a specific, genuine issue of material fact--that is, a fact relevant under the applicable substantive law--remains, summary judgment is precluded. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). When the opposing party presents a fact that he alleges to be material, however, he must make a specific showing on the essential elements of each claim to establish that genuine dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 II. Releases and Public Policy
 
 19
 Under Colorado law, one must review four factors to determine the validity of a release of one's negligence claims, to wit: 1) the existence of a duty to the public; 2) the nature of the service/activity performed; 3) whether the contract was entered into fairly; and 4) whether the intention of the parties is expressed in clear and unambiguous language. Heil Valley Ranch, supra, at 784 (quoting Jones v. Dressel, supra, at 376).
 
 
 20
 Here, Breckenridge had a duty to the competitors as members of the public, and speed skiing is an inherently dangerous activity. The last two factors weigh in Breckenridge's favor, however, in that the Release was entered into fairly, with no elements of an adhesion contract present, and the intention to release liability could not have been clearer. Additionally, Fullick was an experienced skier who had signed other similar releases in the past, and his initials appear after each subpart of the Release.
 
 
 21
 Fullick contends in this appeal that, as construed by Judge Matsch, the Ski Safety Act affords protection to skiers that could have been invoked by Fullick but for his execution of the Release. Therefore, Fullick argues, the Release should be held to be in violation of Colorado public policy.
 
 
 22
 The cases Fullick cites in support of his violation of public policy argument generally stand for the proposition that one cannot avoid or modify an express statutory duty by private agreement if to do so would violate the public policy expressed in the statute. This is the precise holding articulated by the Colorado Court of Appeals in Phillips v. Monarch Recreation Corp., 668 P.2d 982 (Colo.App.1983), the case upon which Fullick principally relies.
 
 
 23
 In Phillips, the court found that the operator of a ski area could not rely on assumption of the risk and release of liability language appearing on the back of an unsigned ski lift ticket, as such language was in violation of the public policy of allocating the parties' respective duties with regard to the safety of others, expressed by the Colorado General Assembly in the Ski Safety Act. Phillips, at 987 (citing, In Re Marriage of Johnson, 591 P.2d 1043 (Colo.App.1979)). See also, Town of Newton v. Rumery, 480 U.S. 386, 392, 107 S.Ct. 1187, 1192, 94 L.Ed.2d 405 (1987); People in Matter of K.M.K., 780 P.2d 43, 45 (Colo.App.1989).
 
 
 24
 We think that the Release in this case neither avoids nor modifies any statutory duty found in the Ski Safety Act. If one could never release liability to a greater degree than a release provided in a statute, then one would never need to draft a release, in any context.
 
 
 25
 Additionally, other circuits have enforced similar releases to that signed by Fullick. In a factually similar case, the Ninth Circuit Court of Appeals held that an amateur ski jumper who signed a release of liability before competing in a tournament where he was later injured waived his right to bring a negligence action against the tournament sponsors. Garretson v. United States, 456 F.2d 1017, 1021 (9th Cir.1972). Because Fullick initialed and signed the Release at issue here, the terms of which are neither unconscionable nor illegal, we find that the district court was correct in its conclusion that the Release was valid and did not conflict with public policy.
 
 III. Willful and Wanton Conduct
 
 26
 This Court is cognizant of the offer of proof made by Fullick's counsel that the facts set forth in Dalla Riva's unsigned Affidavit could be demonstrated through Dalla Riva's testimony, if he had been called to testify. (Tr. of Hrng. on Mtn. for Summ.J. at 17.) Nevertheless, Dalla Riva's Affidavit fails to comply with the requirements of form provided by Fed.R.Civ.P. 56(e). Specifically, Dalla Riva makes a number of statements about which he has no personal knowledge, or on which he is not competent to testify. The basic content of the Affidavit, in fact, is simply the legal conclusion that summary judgment is not appropriate in this case.
 
 
 27
 The mere possibility that a factual dispute may exist, without more, is insufficient to overcome a motion for summary judgment. The opposing party must demonstrate some affirmative indication that his version of relevant facts has some basis. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir.1988).
 
 
 28
 Further, as provided by Fed.R.Civ.P. 56(e), facts alleged in an affidavit must be made on personal knowledge. Stevens v. Barnard, 512 F.2d 876, 878-79 (10th Cir.1975); Brown v. Ford Motor Co., 494 F.2d 418, 420 (10th Cir.1974); Citizens Environmental Council v. Volpe, 484 F.2d 870, 873 (10th Cir.1973), cert. denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974). An unsigned affidavit filled with purported legal conclusions about which Dalla Riva is not an expert will not suffice to defeat the district court's grant of summary judgment on the issue of willful and wanton conduct.
 
 IV. Conclusion
 
 29
 The grant of summary judgment by the district judge was proper and is affirmed. Fullick may not recover from Breckenridge either for his negligence claims or for his willful and wanton conduct claim.
 
 
 
 *
 Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Victoria Vacations, Inc. was also a Defendant/Appellee in the case until it was voluntarily dismissed as an improper party by Fullick. (Pltf./Applt.'s Reply Brf. at 8.)